IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES LIBERTY,<br><br>        *Plaintiff*,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>        *Defendant*. | CIVIL ACTION<br>No. 16-02390 |

**PAPPERT, J.**                                                                                            **December 21, 2016**

<u>**MEMORANDUM**</u>

James Liberty was injured in a motor vehicle accident. Because he selected the "limited tort" option on his insurance, he can recover noneconomic damages only if his injuries are considered "serious" under Pennsylvania's Motor Vehicle Financial Responsibility Law. Defendant State Farm has moved for summary judgment, contending that Liberty's persistent neck injury is not serious as that term is defined in the statute. Because reasonable minds could differ on this question, the Court denies State Farm's motion.

**I.**

James Liberty, a plumber's apprentice, was driving to work on May 30, 2014 when another car struck his car from behind.[1] (Pl.'s Ex. E, at 30:11–13, 14:18, ECF No. 13-5, hereafter "Liberty Dep.") His car was totaled. (*Id.* at 36:13–14.) Liberty did not lose consciousness, sustain any cuts or abrasions, or experience any bruising as a result of the collision. (*Id.* 31:10–18.)

---

[1]     State Farm failed to provide a statement of undisputed material facts with their motion for summary judgment in the manner required by the Court's Policies and Procedures.

1

Although he did not need medical attention at the accident scene, Liberty went to Holy Redeemer Hospital a few hours later because his eyes were unusually dilated. (*Id.* 36:1–5, 41:1–24.) The hospital released Liberty the same day, attributing his dilated eyes to whiplash and adrenaline, and diagnosed him with contusions and sprains. (*Id.* at 42:3–7; Pl.'s Ex. A, ECF No. 13-1.) The next day, Liberty had pain in his neck, lower back, right knee and right ankle. (Liberty Dep. at 40:10–14.)

Liberty sought treatment from Dr. Gruzin at Temple Medical Associates. (*Id.* at 50–51:15.) Liberty received physical therapy and chiropractic treatments two to three times a week between June 5 and November 3, 2014. (*Id.* 52:14–23; 54:8–12.) The treatments healed his ankle, knee and back, but he continued to have problems with his neck. (*Id.* 55:17–56:12.) Liberty had an MRI that revealed bulging discs at C5-6 and C6-7, which Dr. Gruzin attributed to the accident. (*Id.* at 58:22–59:5; Pl's Ex. C, at 1.)[2]

After his treatment with Dr. Gruzin, Liberty began seeing Dr. Susan Moses, a chiropractor, on an as needed basis. (*Id.* at 60:8–19; 61:21–62:2.) Liberty explained that his neck becomes very tight, to the point at which he cannot move it. (*Id.* at 62:19–21.) When this occurs, treatment from Dr. Moses provides temporary relief. As of Liberty's deposition on July

---

[2] At State Farm's request, Dr. Marc Manzione performed an independent medical evaluation of Liberty. Dr. Manzione did not dispute that Liberty's accident resulted in cervical, thoracic and lumbar soft tissue injuries. He did, however, attribute the disc bulging (found on Liberty's MRI) to degenerative disc disease. (Def.'s Ex. L, at 4, ECF No. 12-12.) While the "injury to the cervical spine was sustained in the presence of mild degenerative disc disease," Dr. Manzione concluded there "is no objective support for the contention that this accident resulted in any musculoskeletal injury which would have permanent residuals or account for any of the current subjective complaints." (*Id.* at 4.)

Liberty's physician, Dr. Gruzin, also authored a report. He concluded that as "a direct result of the trauma sustained in this motor vehicle accident, Mr. Liberty suffered significant injuries to the supporting myofascial and ligamentous structures of his spine, resulting in a lingering pain syndrome." (Pl.'s Ex. C, at 3, ECF No. 13-3.) He noted that there was evidence of disc degeneration but also concluded that Liberty's MRI "revealed evidence of straightening of the cervical spine which can be seen with muscle spasm." (*Id.*)

Liberty was also evaluated by Dr. Gerald Dworkin. Dr. Dworkin diagnosed Liberty with "[p]ersistent neck and right shoulder pain secondary to traumatic discogenic bulging. (Pl.'s Ex. F, at 2, ECF No. 16.) He further concluded that "the above diagnoses, including persistent neck and right shoulder pain, is secondary, in its entirety, to the [Motor Vehicle Accident]." (*Id.*)

25, 2016, he continued to experience pain in his neck.  When his neck is in a spasm, his pain level is a 10 on a 0 to 10 point scale.  (*Id.* at 64:23.)  When not in a spasm, his neck is "annoying" and "throbbing nonstop," (*id.* at 64:7–8.), and his pain level is a 7 on the same scale. (*Id.* at 64:20.)

Liberty's life activities have changed since his injury.  He is limited in his ability to help his wife care for their newborn child.  (*Id.* at 71:9–13.)  Liberty is also unable to crawl on the floor and play with his children like he used to before the accident.  (*Id.* at 69:17–19; 72:7–11.) While he is able to work, (*id.* at 70:18–19), his boss is aware of his injury and assigns him smaller work "rather than the heavier stuff," (*id.* at 16:8–10).  When driving, Liberty is unable to turn his head and must instead turn his whole body.  (*Id.* at 71:3–5.)  Finally, Liberty can no longer do what he calls "extreme workouts," like P90X and Insanity.  (*Id.* at 67:20–22.)

Liberty sued State Farm on May 10, 2016 in the Philadelphia Court of Common Pleas. State Farm removed the case to this Court on May 17, 2016 and filed an answer three days later. *See* (ECF Nos. 1 & 2.)  On November 3, 2016 State Farm filed its motion for summary judgment, (ECF No. 12), and Liberty responded to the motion on November 23, 2016, (ECF No. 13).

## II.

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law.  *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002); *see also* Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).  A mere scintilla of evidence in

support of the non-moving party will not suffice; there must be evidence by which a jury could reasonably find for the non-moving party. *Id.* at 252.  Summary judgment is appropriate where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009).  The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

### III.

#### A.

In Pennsylvania, individuals who purchase car insurance may, under the Motor Vehicle Financial Responsibility Law ("MVFRL"), select a "limited tort" or "full tort" plan. *See* 75 P.S. § 1705; *see also McCloskey v. Westfield Ins. Co.*, No. 15-6210, 2016 WL 6821900, at *3 (E.D. Pa. Nov. 18, 2016).  If an individual selects the limited tort plan, he cannot maintain an action for any noneconomic loss arising out of a motor vehicle accident that is the fault of another person unless the injury sustained qualifies as a "serious injury." *See* 75 P.S. § 1705(a)(1) & (d); *see also Washington v. Baxter*, 719 A.2d 733, 736 (Pa. 1998).  The MVFRL defines serious injury as

a "personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." 75 P.S. § 1702.[3]

In *Washington v. Baxter*, the Supreme Court of Pennsylvania instructed that "unless reasonable minds could not differ on the issue of whether a serious injury had been sustained," the question should be left to the jury and that the jury should decide the issue of seriousness "in all but the clearest of cases." *Id.* at 740.  To determine if a plaintiff has sustained a "serious impairment of body function," the decisionmaker should decide what body function, if any, was impaired because of the accident and then ask if this impairment is serious.  In deciding whether the impairment is serious, relevant factors include "the extent of the impairment, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors." *Id.*  Importantly, the focus of the inquiry should be on *how* the injury has affected body function, not the injuries themselves.  The body impairment does not need to be permanent to qualify as serious. *Id.*

**B.**

Liberty selected the limited tort option for his motor vehicle insurance. *See* (Def.'s Ex. B, Request for Admission #2, ECF No. 12-2; Def.'s Ex. C, ¶ 2, ECF No. 12-3; Def.'s Ex. D, at 7, ECF No. 12-4).  He asserts that he suffered a "serious impairment of body function" and is entitled to maintain an action to recover for noneconomic damages.  That Liberty was injured in a motor vehicle accident that was not his fault is not in dispute. *Cf. Peterman v. Sakalauskas*, 978 F. Supp 2d 439 (E.D. Pa. 2013).  The only issue is whether Liberty's injuries and impairments qualify as "serious" under the MVFRL.

---

[3] Liberty survived the accident and does not allege that he has suffered "permanent serious disfigurement." Thus, his injury must be a "serious impairment of body function" before he can recover damages for pain and suffering.

A jury could find that Liberty has sustained an impairment of a body function. There is record evidence of his neck injury, including Dr. Gruzin's report which concludes that "as a direct result of the trauma sustained in [the accident], Mr. Liberty suffered significant injuries to the supporting myofascial and ligamentous structures of his spine, resulting in a lingering pain syndrome." (Pl.'s Ex. C, at 4, ECF No. 13-3; *see also* Pl.'s Ex. F, at 2, ECF No. 16 (report of Dr. Dworkin).) Liberty also testified about his extensive neck pain and spasms.

Reasonable minds could disagree over the seriousness of Liberty's body impairment. Liberty has experienced constant neck pain and physical limitations since the accident. His treatment has been extensive—he was in physical therapy two to three times a week for five months and still sees a chiropractor on an as needed basis. Moreover, Liberty's injuries have affected his daily activities including his ability to care for his children and to fully participate at work.

State Farm relies on *Washington* to support its argument that summary judgment is warranted here. The plaintiff in *Washington* had sustained a cervical strain or sprain, cuts and contusions and an injury to his foot. *Id.* at 735. He missed four or five days of work at his full time job and four weeks of his part time job due to the injury. *Id.* at 741. At his deposition a year later, he indicated that he experienced pain every other week, but was "still able to perform his work duties and aside from having to utilize a riding mower, he was able to engage in his normal daily activities." *Id.*

The accident's effects on Liberty are quite different. He testified that he is constantly in some form of pain, which varies depending on if his neck is in spasm. Moreover, unlike the plaintiff in *Washington*, who could only cite his use of a riding mower as an example of a daily

6

activity limitation, Liberty has described many daily activities impacted by his injury that are more significant.

State Farm also relies on the Pennsylvania Superior Court's decision in *McGee v. Muldowney*, 750 A.2d 912 (Pa. Super. Ct. 2000). In *McGee*, the plaintiff sustained a cervical strain and sprain and experienced pain in his back, neck and shoulders following a motor vehicle accident. *Id.* at 914. Plaintiff said he could no longer work as a plumber and had to take a job as an electrician. *Id.* Additionally, he claimed he avoided heavy lifting tasks at work because of his injuries, though his employer was not aware of this fact. *Id.* The *McGee* court affirmed the trial court's grant of summary judgment. It explained that while plaintiff had sought some medical treatment in the months after the accident, he did not seek any treatment for the next five and a half years. Moreover, his subjective allegations without any objective medical evidence were not sufficient to establish his injury as "serious."

Liberty has testified to his extensive medical treatment and his need to see a chiropractor on an as needed basis. Moreover, he explained that unlike the plaintiff in *McGee*, his employer *is* aware of his physical limitations and has adjusted Liberty's workload accordingly. *Cf. McCloskey*, 2016 WL 6821900, at *5 (distinguishing *McGee* on the issue of employer knowledge); *Peterman*, 978 F. Supp. 2d at 448–49 (same).

Liberty's physical impairments are more analogous to those of the plaintiff in *Kelly v. Ziolko*, where the Pennsylvania Superior Court reversed the trial court's grant of summary judgment. 734 A.2d 893 (Pa. Super. 1999). Kelly suffered injuries to his neck, back and knees in addition to numbness in some of his toes in a motor vehicle accident. *Id.* at 899. Like Liberty, he was discharged from the hospital the same day of the accident, underwent a course of physical therapy and sought treatment from a chiropractor. *Id.* Kelly described his daily back pain as

"dull, achy pain." *Id.*  As a result, he had trouble sleeping, could not run, could not walk or sit for periods longer than 15 minutes and found it "difficult to play with his child." *Id.*  Moreover, he could no longer engage in various recreational activities. *Id.* at 900.  Like Liberty, Kelly returned to work quickly following the accident and did not receive treatment or prescription medication for his pain. *Id.*  The Superior Court recognized that the case "present[ed] a less clear-cut picture of the seriousness of the plaintiff's injuries" than others, but stressed that "it is only where 'reasonable minds can not differ as to whether the plaintiff sustained a serious injury' that the trial court should grant summary judgment." *Id.*

*Furman v.* Shapiro, 721 A.2d 1125 (Pa. Super. Ct. 1998), is also instructive.  There, the plaintiff injured her lower back in a motor vehicle accident and was diagnosed with a bulging disc. *Id.* at 1127.  Her injuries prevented her from walking more than one block at a time, lifting heavy objects and bathing her daughter. *Id.*  She also moved to a part time position at work. *Id.*  Her back problems continued over three years after the accident.  The court concluded that "reasonable minds could differ" as to whether she suffered a serious injury.  While Liberty's limitations are arguably less severe than this, there are many similarities.  Doctors diagnosed Liberty with bulging discs and he cannot perform heavy lifting at work.  His pain has continued for years after his accident and he has similar trouble caring for his young child.  *Cf. McCloskey*, 2016 WL 6821900, at *2 (summary judgment denied where plaintiff's postconcussion syndrome, *inter alia*, made it difficult for him to take care of his children.)

\*   \*   \*

The Pennsylvania Supreme Court's instructions in *Washington* are explicit: only in the "clearest of cases" will it be appropriate to grant summary judgment on the question of whether plaintiff's injuries are "serious" under the MVFRL.  719 A.2d at 740.  This is not such a case.

*An appropriate order follows.*

                          BY THE COURT:

                          ***/s/ Gerald J. Pappert***
                          GERALD J. PAPPERT, J.